UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JULIE SMITH,<br><br>                              Plaintiff,<br>      v.<br>WALMART INC.,<br><br>                              Defendant. | Case No. 3:24-cv-00222-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Julie Smith filed a personal injury action in state court against Defendant Walmart Inc. following a slip-and-fall accident that occurred on the premises of one of Defendant's stores. (ECF No. 1-2.) Defendant removed the action to this Court. (ECF No. 1.) Before the Court is Plaintiff's motion to remand to state court (ECF No. 9 ("Motion")).[1] Because Defendant's removal was untimely—and as further explained below—the Court will grant the Motion.

**II.    BACKGROUND**

In August 2022, Plaintiff slipped and fell on a puddle of clear liquid near the produce displays in a Walmart store in Elko, Nevada, and sustained injuries. (ECF No. 1-2 at 2.) Plaintiff's counsel sent Walmart Claims Services, Inc. a demand letter on October 18, 2023, documenting special damages of $274,596.81 and demanding $1.8 million to settle her claims against Defendant. (ECF No. 9-1 at 2, 7, 9.) Plaintiff filed this case against Defendant in state court on January 9, 2024. (ECF No. 1-2 at 1.) Plaintiff brought a single claim of negligence against Defendant, seeking general and special damages "in excess of $15,000" and reasonable attorneys' fees. (*Id.* at 4.)

///

---

[1]Defendant responded (ECF No. 10), and Plaintiff replied (ECF No. 11).

Defendant was served with a copy of the Summons and Complaint in the state court case on March 5, 2024. (ECF No. 10 at 2.) On March 26, 2024, Plaintiff mailed Defendant "Plaintiff's Initial List of Witnesses and Documents Pursuant to NRCP 16.1 (Plaintiff's initial disclosures)," which noted that Plaintiff was claiming $274,596.81 in special damages. (ECF Nos. 9-2 at 6 (noting damages amount), 7 (stating that document was mailed to three attorneys at the law firm Hall & Evans, LLC in Las Vegas, Nevada); *see also* ECF No. 11-1 at 2 (indicating that a letter was mailed with cost code Elko Smith Julie); ECF No. 11-2 (swearing that she mailed it to Kurt Bonds at Hall & Evans and asserting that the receipt included as ECF No. 11-1 reflects that mailing).) As further discussed below, Defendant contends its counsel and their staff never received this document on or around March 26, 2024. (ECF No. 10-5 at 3; ECF No. 10-6 at 3; ECF No. 10-7 at 3; ECF No. 10-8 at 2-3; ECF No. 10-9 at 2-3.)

Plaintiff's counsel Sean Rose swears that he had a telephonic Early Case Conference with Defendant's counsel Tanya Fraser on April 3, 2024, where they specifically discussed Plaintiff's initial disclosures served on March 26, 2024. (ECF No. 9-3 at 3.) Ms. Fraser swears that she never acknowledged receiving Plaintiff's initial disclosures during this phone call. (ECF No. 10-5 at 2.)

On April 18, 2024, Stacy Stallings, the officer manager at Plaintiff's counsel's office, sent a copy of a draft joint case conference report in the state court case to Defendant's counsel for their review, asking if she could affix their signature to it and file it. (ECF No. 11-3 at 4.) That draft joint case conference report stated that Plaintiff's initial disclosures had been made March 26, 2024. (ECF No. 11-4 at 4; *see also* ECF No. 11-2 at 3 (swearing she attached this document to her April 18, 2024, email).) Ms. Stallings followed up again on April 29, 2024. (ECF No. 11-3 at 4.) Later that same day, Defendant's counsel Mr. Bonds forwarded Ms. Stallings' email about reviewing the joint case conference report to Cassidy Pappas, Ms. Fraser, and Omar Nagy, writing, "This would be another good one for Omar. Can we get our initial disclosures out and revise this jccr[.]" (*Id.* at 3.)

2

On May 3, 2024, Ms. Pappas emailed Ms. Stallings (at Plaintiff's counsel's firm) and Ms. Fraser, cc'ing Plaintiff's counsel Mr. Rose and several other people, writing, "[o]ur apologies for the delay if you have not received a response from us, however this is approved to have Tanya's signature affixed for filing." (*Id.* at 2.)

On May 8, 2024, the parties filed a joint case conference report in the state court case (ECF No. 10-4; *see also* ECF No. 11-5 (the same document)), which had Plaintiff's initial disclosures attached to it, still dated March 26, 2024, listing Plaintiff's special damages as $274,596.81 (ECF No. 10-4 at 14). This copy of Plaintiff's initial disclosures also had the certificate of service dated March 26, 2024, attached to it as well. (*Id.* at 15.)

Defendant's counsel Ms. Fraser swears she never received Plaintiff's initial disclosures dated March 26, 2024, until May 13, 2024. (ECF No. 10-5 at 3.) Defendant's counsel Omar Nagy says he reviewed the joint case conference report filed May 8, 2024, on May 17, 2024, and noticed that Plaintiff's initial disclosures attached to it were dated March 26, 2024. (ECF No. 10-9 at 2.) Defendant's counsel Mr. Bonds and Patrice Stephenson-Johnson 'categorically deny' ever seeing or reviewing Plaintiff's initial disclosures dated March 26, 2024 until May 20, 2024. (ECF No. 10-7 at 3; ECF No. 10-8 at 2-3.)

On May 24, 2024, Defendant filed a petition for removal to this Court. (ECF No. 1.) Plaintiff subsequently filed the Motion on June 11, 2024. (ECF No. 9.)

**III.   DISCUSSION**

Plaintiff argues for remand because Defendant's removal was untimely; alternatively arguing that Defendants knew the amount in controversy requirement was satisfied when she filed her complaint because of her pre-litigation settlement demand or because she included her assertion that she had already suffered $274,596.81 in special damages in her initial disclosures served March 26, 2024, and Defendant did not remove until May 24, 2024. (ECF No. 9 at 6-9.) Defendant counters that Plaintiff's prelitigation settlement demand is not admissible to prove the amount in controversy and the 30-day removal clock did not start running until May 8, 2024, when the parties filed the joint case

conference report in state court—and thus Defendant's May 24, 2024, removal was timely. (ECF No. 10 at 5-9.) Though the Court does not entirely agree with either party's arguments, the Court overall agrees that Defendant did not timely remove.

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed by the defendant to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). However, courts "strictly construe the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citations omitted). After removal, a plaintiff may move to remand the action to state court for lack of federal jurisdiction or for procedural defects. *See* 28 U.S.C. § 1447(c). And a "court may remand for defects other than lack of subject matter jurisdiction only upon a timely motion to remand." *Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014) (citations omitted).[2]

Defendant removed this action under 28 U.S.C. § 1332 based on diversity jurisdiction. (ECF No. 1 at 3-5.) The parties do not dispute that the diversity of citizenship requirement is satisfied or that the amount in controversy exceeds $75,000. (ECF No. 9 at 6; ECF No. 10 at 3-4.) As noted, Plaintiff moves to remand based on untimeliness—a procedural defect—of Defendant's removal. (ECF No. 9 at 4-9.) *See also Smith*, 761 F.3d at 1045 (finding the time limit requirements in the removal statute to be procedural).

///

---

[2]Defendant does not argue Plaintiff's Motion was untimely, but for absence of doubt, Plaintiff timely filed her Motion. Defendant filed its notice of removal on May 24, 2024 (ECF No. 1) and Plaintiff moved to remand on June 11, 2024 (ECF No. 9), or less than 30 days later. *See Smith*, 761 F.3d at 1044 ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).") (quoting § 1447(c)).

Under 28 U.S.C. § 1446(b)(3), "if the initial pleading does not indicate that the case is removable," a defendant may file its notice of removal within 30 days after it receives "a copy of an amended pleading, motion, order or other paper from which removability may first be ascertained." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (citing 28 U.S.C. § 1446(b)(3)) (quotations omitted); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (stating courts do not charge defendants "with notice of removability until they've received a paper that gives them enough information to remove"). "If the notice of removal was untimely, a plaintiff may move to remand the case back to state court." *Carvalho*, 629 F.3d at 885 (citations omitted).

The parties agree that removability was not clear from the face of the Complaint, as Plaintiff therein alleged only general and special damages exceeding $15,000. (ECF No. 9 at 5; ECF No. 10 at 4.) Thus, the question before the Court is when Defendant received other paper from which removability may first be ascertained. *See Carvalho*, 629 F.3d at 885.

Plaintiff's first argument based on the prelitigation settlement demand fails to persuade for two reasons. (ECF No. 9 at 6-7.) First, the prelitigation settlement demand was mailed to Walmart Claims Services, Inc., so it did not necessarily make its way to Defendant Walmart, Inc. or Defendant's counsel in this case, Hall & Evans, LLC. (ECF No. 9-1.) Second, and more importantly, even assuming the prelitigation settlement demand made its way to Defendant, a settlement demand that precedes the filing of the initial pleading cannot and does not constitute "other paper" that would set the 30-day removal clock running. *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013).[3] And Plaintiff sent the settlement demand she relies on before she filed her

---

[3] The Court accordingly does not need to address Defendant's other argument that the settlement demand is 'inadmissible,' but feels compelled to note that Defendant's read of *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) is incorrect. (ECF No. 10 at 5.) *Cohn* clearly states that "[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." 281 F.3d at 840 (footnote and citation omitted). And indeed, the *Cohn* court found a demand letter

5

1 Complaint. (*Compare* ECF No. 9-1 (dated October 18, 2023) *with* ECF No. 1-2 at 1 (filed January 9, 2024).)

As to Plaintiff's second argument (ECF No. 9 at 7-9), the parties, "both admit that Plaintiff's Initial Disclosures were sufficient to put Defendant on notice of the removability of the matter" (ECF No. 10 at 6). Thus, the question is when Defendant received Plaintiff's initial disclosures. And Defendant does not meet its burden to show its removal was timely, *see Gauss* 980 F.2d at 566 (assigning Defendant the burden to show that removal was proper), because Defendant "received a paper that [gave] them enough information to remove[,]" *see Durham*, 445 F.3d at 1251, by April 18, 2024 at the latest, when Ms. Stalling sent Defendant's counsel the draft joint case conference report that undisputedly stated Plaintiff had served her initial disclosures on March 26, 2024. (ECF No. 11-3 at 4; ECF No. 11-4 at 4; *see also* ECF No. 11-2 at 3 (swearing she attached ECF No. 11-4 to her April 18, 2024, email).)

Indeed, while Defendants vigorously dispute whether they ever got the initial disclosures on or around March 26, 2024, when Plaintiff mailed them, *see supra*, they do not dispute that they got Ms. Stallings' email with the draft joint case conference report attached to it on April 18, 2024. Nor do they dispute that draft joint case conference report stated that Plaintiff filed her initial disclosures on March 26, 2024. Defendant's counsel even approved that joint case status report for filing on May 3, 2024 (ECF No. 11-3 at 2), rendering their assertion that they could not have been aware that the amount in controversy requirement was satisfied until the joint case conference report was filed on May 8, 2024, incredible.

In addition, Mr. Bonds emailed the draft joint case conference report to his colleagues on April 29, 2024. (*Id.* at 3.) This confirms that he received the joint case conference report containing the statement that Plaintiff filed her initial disclosures on March 26, 2024, earlier than the May 8 date Defendant relies upon in responding to the

---

was sufficient to establish the amount in controversy. *See id.* Said otherwise, it is not the fact that it was a settlement demand letter that matters, but instead the timing of the demand letter.

6

motion. It is possible he is arguing he did not read Plaintiff's initial disclosures showing that the amount in controversy was satisfied until either May 8 (as argued in the motion, ECF No. 10 at 6-9) or May 20, 2024 (as he states in his declaration, ECF No. 10-7), but the pertinent law does not ask whether he read it, it asks whether he "received a paper that [gave] [him] enough information to remove[.]" *See Durham*, 445 F.3d at 1251. If he or his colleagues had followed the reference to the initial disclosures in the joint case status report to those disclosures, Defendant does not even dispute that they would have put Defendant on notice of the case's removability. (ECF No. 10 at 6.)

In sum, even if Defendant did not get Plaintiff's initial disclosures on March 26, 2024, Defendant got a document Defendant's counsel later signed on to that should have led them back to Plaintiff's initial disclosures on April 18, 2024—and thus gave them enough information to remove. Defendant's petition for removal was not filed with this Court until May 24, 2024, which exceeds the 30-day removal deadline. (ECF No. 1.) The Court accordingly grants Plaintiff's Motion. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995) (stating that remand based on untimely removal is "precisely the type of removal defect contemplated by § 1447(c)"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (stating that "a timely objection to a late petition will defeat removal"); *Beck v. Nationstar Mortg.*, No. 3:19-cv-00545-MMD-WGC, 2019 WL 5839311, at *2 (D. Nev. Nov. 6, 2019) (granting the plaintiff's motion to remand because defendants' removal was untimely).

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiff's motion to remand to state court (ECF No. 9) is granted. This action is remanded to the Fourth Judicial District Court of Elko County, Nevada.

The Clerk of Court is directed to close this case.

DATED THIS 27th Day of September 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE